**Debra Holte FOREHAND, individually d/b/a Tax Service of Dothan, Plaintiff,**

v.

**The INTERNAL REVENUE SERVICE of the United States of America; The Commissioner of the Internal Revenue Service; Richard F. Moran, IRS District Director; Richard F. Marsh, Director IRS Memphis Service Center; Mary F. Green, Electronic Filing Coordinator, Internal Revenue Service for the State of Alabama, Defendants.**

Civ. A. No. 95–D–0052–S.

United States District Court,
M.D. Alabama,
Southern Division.

Jan. 26, 1995.

Brian W. Dowling, Dothan, AL, for plaintiff.

Redding Pitt, U.S. Atty., Artur G. Davis, Asst. U.S. Atty., Montgomery, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

De MENT, District Judge.

This matter is presently before the court on Defendants' Motion to Dissolve a temporary restraining order issued by this Court on January 13, 1995. Defendants filed their motion on January 17, 1995, and contemporaneously submitted a brief in support thereof. Plaintiff filed a response to Defendants' motion on January 20, 1995. For reasons articulated below, the court finds that Defendants' motion is due to be granted.

### JURISDICTION & VENUE

Plaintiff alleges that the Internal Revenue Service deprived her of due process of law in suspending her participation in the 1995 Electronic Filing Program. Therefore, subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331. Personal jurisdiction and venue are not in dispute.

### BACKGROUND

The facts in this action are not in material dispute. In 1992, Plaintiff, Debra Forehand (Mrs. "Forehand"), applied to the Internal Revenue Service (the "IRS") for a license to serve as an electronic filer of federal income tax returns. The IRS issued Mrs. Forehand the requested license for the 1992 federal income tax filing season, and Plaintiff prepared an estimated six hundred (600) income tax returns during this campaign.[1] The IRS approved and licensed Plaintiff to electronically file federal income tax returns again in 1993. Plaintiff electronically transmitted ap-

---

1. Plaintiff first engaged in electronic filing work in early 1993.

proximately eight hundred (800) tax returns with the IRS beginning in early 1994 during the 1993 tax return season.

In a letter dated December 1, 1994, and signed by Richard F. Marsh, Director of the IRS Center, Memphis, Tennessee, the IRS relicensed Plaintiff to electronically file income tax returns for the 1994 tax year. According to the letter, Mrs. Forehand was "accepted as a participant in electronic filing" and could "begin filing electronic returns on or after January 13, 1995." The letter also established that Plaintiff was assigned the same electronic filing identification number that she used in the previous two seasons.

Plaintiff claims, and Defendants do not refute, that she expended sums of money and time making the necessary preparatory business arrangements in reliance on the IRS's acceptance letter. Plaintiff claims that her preparation included but are not limited to: designing and printing in-house compliance forms for clients, making long distance telephone calls to order the proper software, purchasing filing software at a cost of over five hundred dollars ($500), taking one week to interview employees for the upcoming tax season, hiring and training accepted job applicants, installing the telephone lines for computer modems, and testing the electronic filing software package.

On January 5, 1995, Plaintiff received a letter dated December 29, 1994, which informed her that the correspondence she had recently received was in error. The letter stated that the IRS was suspending Mrs. Forehand's participation in the Electronic Filing Program. According to the letter, the IRS, in accordance with Revenue Procedure 94–63, Obligations of Participants in the Electronic Filing Program, performed a suitability check on Mrs. Forehand. Based on the results of said check, the IRS discovered and suspended Plaintiff for the following reasons: 1) Plaintiff had not filed a federal income tax return for the 1993 tax year; and 2) Plaintiff had an outstanding balance of seven hundred thirty-three dollars and forty-

seven cents ($733.47), plus penalties and interest, due on her 1991 federal income tax return.[2] The December 29, 1995, letter set forth the review process and noted that a failure to respond within 30 days would result in the irrevocable termination of Plaintiff's right to an administrative review. Plaintiff subsequently remitted seven hundred fifty and 86/100 dollars ($750.86) in full satisfaction of the balance due on her 1991 federal income return. Plaintiff has also filed a federal income tax return for the 1993 tax year.

On January 13, 1995, Plaintiff moved for a temporary restraining order and preliminary injunction or, alternatively, a writ of mandamus seeking to enjoin the IRS from preventing Plaintiff's participation in the 1995 Electronic Filing Program. Following a brief hearing, the Court granted Plaintiff's motion and rendered an order reflecting its ruling. On January 17, 1995, Defendants filed a motion to dissolve the court's January 13, 1995, temporary restraining order. Plaintiff responded to the defendants' motion on January 20, 1995. The court conducted a hearing on January 23, 1995, regarding the merits of the parties' contentions.

## DISCUSSION

The government posits two reasons for the immediate dissolution of the January 13, 1995, preliminary injunction issued by the court. First, Defendants contend that Mrs. Forehand has no cognizable property or liberty interest at stake. Defendant contends that electronic filing is a privilege granted by the IRS and no one has a right to participate in this "government program." The government asserts that participation in the electronic filing program is conditioned upon acceptance into the program and does exist in an unrestricted entitlement form. Second, Defendant argues that the Anti–Injunction Act, 26 U.S.C.A. § 7421(a), is applicable in this action and, therefore, the court lacks the jurisdictional authority to render equitable relief in this action.[3]

---

**2.** The letter was signed by Marsha A. Ramirez for Richard F. Moran, District Director. Also, Plaintiff was directed to address any questions to Ms. Mary Green, the Electronic Filing Coordinator.

**3.** Section 7421(a) provides:
"…. no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, wheth-

■ It is axiomatic that the government may not deprive any person of "life, liberty or property without due process of law." U.S. Const. Amend. V. Plaintiff asserts that it had a property interest in the electronic filing program established by the IRS. Plaintiff also asserts that her suspension from participation in the program constitutes a deprivation of liberty because the government's action is based on stigmatizing allegations.

The United States Eleventh Circuit Court of Appeals has found that to prevail on a due process claim, a plaintiff must establish: "1) a constitutionally protected interest in life, liberty or property; 2) governmental deprivation of that interest; and 3) the constitutional inadequacy of procedures accompanying the deprivation." *Bank of Jackson County v. Cherry,* 980 F.2d 1362, 1366, *cert. denied* —— U.S. ——, 114 S.Ct. 73, 126 L.Ed.2d 42 (1993) (citations omitted). A property interest must rest upon "a legitimate claim of entitlement". *Cherry,* 980 F.2d at 1364 (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). It is firmly established that "no citizen has a 'right' ... to do business with the government." *Cherry,* 980 F.2d at 1366 (quoting *Gonzalez v. Freeman,* 334 F.2d 570, 574 (D.C.Cir.1964)).

Here, Plaintiff contends that the government should be equitably estopped from revoking her unconditioned license to operate as an electronic filer for the 1994 income tax return season.[4] Plaintiff expended funds in reliance on the unconditioned letter dated December 1, 1994. Plaintiff acquired office space, hired necessary persons, and procured program software to facilitate the anticipated electronic filing operation.

In *Bank of Jackson County v. Cherry,* the United States Eleventh Circuit Court of Appeals determined that Farmers Home Administration, a federal agency, was under no obligation to continue honoring loan guaran-

tees submitted by the Bank of Jackson County (the "Bank"). *Cherry,* 980 F.2d at 1366. After emphasizing that its analyses must not focus on the weight of the Bank's interest, but rather on the "nature" of that interest, the *Cherry* court stated, "[s]imply put, federal law does not create an entitlement to FHA loan guaranties." *Id.* Moreover, courts have consistently held that private citizens are not entitled to engage in government programs, whether such individuals are rejected initially or suspended after initially acceptance. *See Holmes v. United States,* 868 F.Supp. 1348 (M.D.Ala.) (finding no property interest in store's participation in federal food stamp program); *Talley v. Lane,* 13 F.3d 1031 (7th Cir.1994) (no protected interest in store's participation in federal food stamp program); *Frank's Livestock and Poultry Farm, Inc. v. United States,* 905 F.2d 1515 (Fed.Cir.1990) (no protected interest in obtaining grain reserve loan); *ATL, Inc. v. United States,* 736 F.2d 677, 683 (Fed.Cir.1983) (suspended contractor has no constitutionally protected interest in retaining government contract); *Transco Security, Inc. v. Freeman,* 639 F.2d 318 (6th Cir.), *cert. denied,* 454 U.S. 820, 102 S.Ct. 101, 70 L.Ed.2d 90 (1981) (no property interest in bidding on government contracts).

In the instant situation, Plaintiff has not directed the court's attention to any "independent source of law" guaranteeing her an entitlement to electronically file federal income tax returns; therefore, Plaintiff merely possesses an abstract need or desire to engage in the subject federal activity—which does not establish an entitlement. *See Cherry,* 980 F.2d at 1366. Accordingly, the court finds that Plaintiff is not entitled to participate in electronic filing.

■ Plaintiffs further contends that the IRS somehow did not act in good faith in applying its application standards. The court notes that the IRS has the authority to set guidelines for participation in the elec-

---

er or not such person is the person against whom such tax was assessed."
26 U.S.C.A. § 7421(a).

**4.** The IRS has an administrative review process established entitled "Administrative Review Process for Suspension from the Electronic Filing

Program." However, Plaintiff contends that if she were to pursue an appeal in the prescribed manner, the rapid income tax return season will have passed. Thus, Plaintiff claims that this process is constitutionally unsound.

tronic filing program. *See Talley v. Lane*, 13 F.3d 1031, 1035 (7th Cir.1994) (Chicago Housing Authority possessed authority to establish its own tenant selection criteria).[5] Plaintiff places extreme emphasis on a 1992 "Handbook for Electronic Filers" provision which states:

> [i]f an applicant's failure to pay taxes is the determining factor in not being allowed to participate in the program, a conditional acceptance will be provided. The terms of the acceptance are as follows:
>
> 1. Applicant must pay all outstanding liabilities within six months of applying or by the first day of service center electronic filing production. . . . or whichever comes first.

*Handbook for Electronic Filers*, July 1992.[6] Plaintiff exhorts the court to construe this provision to mean that so long as an applicant for the electronic filers program satisfies his or her tax liability within the prescribed six month period the applicant is free to participate.

■ However, the court does not so construe the provision. As Ms. Mary Green, the IRS's Electronic Filing Coordinator for the State of Alabama, pointed out during the hearing, the timely satisfaction of an outstanding debt must be the *determining* factor in the decision not to grant the applicant a license in order for a suspended electronic filer to be reinstated. As the IRS points out, and Plaintiff does not disagree, Plaintiff also failed to file a timely and accurate tax return for the 1993 tax year, in violation of Rev. Proc. 94–63 § 4.12(2).

5. In *Talley*, the Plaintiff, Charles Talley, brought suit against the Chicago Housing Authority alleging that the Authority denied his housing application in violation of, among others, the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* In holding that the plaintiff had no property interest in CHA housing, the Seventh Circuit Court of Appeals noted that "the determination that Talley is an undesirable applicant because of his extensive criminal record is a discretionary decision." *Talley*, 13 F.3d at 1035.

6. In neglecting to satisfy her tax liabilities for the 1991 tax year, Plaintiff violated Rev.Proc. 94–63 § 4.12(3), which states:
> [t]he following reasons may result in the rejection of an application to participate in the 1995

■ Plaintiff contends that § 4.12(2) requires that a tax return be untimely and inaccurate before the IRS may prevent her participation in the program.[7] Plaintiff has misconstrued the provision because the provision requires the applicant to file timely *and* accurate tax returns, not timely *or* accurate tax returns. Since Plaintiff concedes that she did not file a timely tax return for the 1993 return season, the court concludes that the IRS did not act improvidently.[8] The court will now address Plaintiff's deprivation of liberty argument.

■ The court notes that liberty interests are broader than property interests. In *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), the Court stated that liberty encompasses "the right of the individual to contract, to engage in the common occupations of life. . . . and generally to enjoy those privileges long essential to the orderly pursuit of happiness by free men." *Meyer*, 262 U.S. at 399, 43 S.Ct. at 626. The United States Supreme Court has established that this broad conception of liberty includes one's right in his or her reputation, conjoined with the more palpable benefits associated with a person's good name. *See Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976).

To prevail on a due process claim grounded in deprivation of a liberty interest in reputation, Mrs. Forehand must satisfactorily demonstrate: 1) a stigmatizing allegation; 2) dissemination or publication of the allegation; and 3) loss of some tangible interest due to publication of the stigmatizing event. *Cherry*, 980 F.2d at 1367 (citations omitted).

Electronic filing program (this list is not inclusive):
(3) failure to timely pay personal or business tax liabilities.

7. Rev.Proc. 94–63 § 4.12(2) provides that "failure to file timely and accurate business or personal tax returns" may result in the rejection of an applicant for the 1995 Electronic Filers Program.

8. The court also points out that Ms. Green stated under oath during the January 20, 1995, hearing that she has suspended participation in the electronic filing program for the same omissions in 100's of previous situations.

The court finds that Plaintiff has not demonstrated that the IRS deprived her of liberty in revoking Plaintiff's electronic filing license.

Here, Mrs. Forehand asserts that because the IRS will publish, and may already have published, her suspension in accordance with Rev.Proc. 94–63. According to this provision, "[t]he Service will list in the Internal Revenue Bulletin, district office listings, district office newsletters, and on the EFS Bulletin Board the name and owner(s) of any entity suspended...."

A stigmatizing allegation will not implicate liberty interests unless it is publicized.[9] *Cherry*, 980 F.2d at 1367–68 (citations omitted). In *Cherry*, the court determined that the dissemination of bad faith allegations against the Bank of Jackson County only to the Bank itself, two FHA county supervisors in Florida, an assistant U.S. Attorney, and to Department of Agriculture lawyers, and not to the general public, was not sufficiently publicized to rise to a constitutional deprivation of liberty. *Id.* at 1368.

According to the regulation cited by Plaintiff, only the IRS has access to the information. Plaintiff does not so much as allege that the general public has access to the circumstances surrounding the IRS's action. Furthermore, no other government agency is privy to the information concerning Plaintiff's suspension from the electronic filing program.[10]

In line with the Cherry court's reasoning, the court finds that the IRS may provide notices concerning suspended licensees to intra-agency departments without running afoul of the Due Process Clause of the Constitution. As the court noted in *Cherry*, such notice merely alerts other departments that the plaintiff is not eligible for participation in the subject program. *See Cherry*, 980 F.2d at 1268.

### Conclusion

Because the court finds that Plaintiff has no constitutionally cognizable property or liberty interest at stake in this matter, the court deems it unnecessary to address Defendants' Anti–Injunction argument. Accordingly, the court reserves ruling on that issue. Therefore, it is

CONSIDERED and ORDERED that Defendants' motion to dissolve the Court's temporary restraining order of January 13, 1995, be and the same is hereby GRANTED. Furthermore,

The clerk of this court is ORDERED and DIRECTED to refund to Mrs. Debra Forehand the sum of Ten Thousand and NO/100 Dollars ($10,000) heretofore deposited in the Registry Fund of this court as a cash bond in this action.

Each party will bear his, her or its own costs of court incurred herein.

---

9. Although Mrs. Forehand neglects to articulate the manner in which the IRS's action stigmatizes her, the court makes the assumption arguendo.

10. The Cherry court noted that, although the defendants conversed with government attorneys regarding the Bank's purported misconduct, the allegations were not communicated to any other government agency. *Cherry*, 980 F.2d at 1368.